## THE COASTWISE.

## THE FORT ARMSTRONG.

## COASTWISE TRANSP. CORPORATION v. CHARLES NELSON CO. et al.

### No. 162.

Circuit Court of Appeals, Second Circuit.

Jan. 8, 1934.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Robert S. Erskine and Henry P. Elliott, both of New York City, of counsel), for appellants.

Duncan & Mount, of New York City (H. W. Dieck, Jr., and Charles R. Millett, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

PER CURIAM.

The collision occurred in the Elizabeth river near Norfolk, Va., on the night of August 9, 1929. The Fort Armstrong left the Army Base piers and proceeded through a channel leading to the main channel into which she turned to go down the river. To make her turn to starboard and get straightened out in the 600-foot dredged channel necessitated backing, and while she was engaged in this maneuver the Coastwise, which was bound down the river from Lambert's Point,

came up with her and the port bow of the Coastwise came into contact with the stern of the Fort Armstrong. No damage was suffered by the latter, but the bow of the Coastwise was injured. The District Court held both vessels at fault, the Coastwise for not having held back sufficiently to keep out of the way, the Fort Armstrong for having continued her backing movement when it should have been plain to her navigators that there was a risk of collision.

The fault of the Coastwise is plain. She saw the Fort Armstrong when more than a mile away, knew that she would have to "back and fill" to get straightened out in the channel, and intended to follow her down the river. Nevertheless the Coastwise kept on at full speed for ten minutes, then at half speed for two minutes, then stopped her engines for one minute, had them half astern for one minute, and finally put them full astern only one minute before the collision. These engine movements are taken from her log, and discredit the story of more careful navigation to which her witnesses testified. If the Fort Armstrong be considered as on a steady course, despite having to back to make her turn, then under the rules applicable to an overtaking situation, the Coastwise was bound to keep out of the way. But it is unnecessary to decide whether the Fort Armstrong was on a steady course; if the situation be viewed as one of special circumstances, the Coastwise fares no better. She knew that the Fort Armstrong would have to back to make her turn. Just how far she might have to back was a matter of conjecture. The Coastwise should have kept far enough away to allow her necessary freedom of action. She failed to do so, assuming apparently that the other vessel would get straightened out more quickly than she did. Indeed, when the Coastwise first put her engines full speed astern she was already within hailing distance, and her master shouted to the Fort Armstrong to go ahead. Moreover, she did not have a full head of steam, which made it the more necessary for her to avoid getting into close quarters. Her fault is glaring.

Fault on the part of the Fort Armstrong can be predicated only upon a finding that she backed after she should have known that to do so would endanger the Coastwise. In turning to a consideration of this question it is appropriate to note that the testimony of all the witnesses was taken by deposition so that the trial judge was in no better position than are we to draw conclusions as to negligence. The Kalfari, 277 F. 391, 399 (C. C. A. 2); The Africa Maru, 54 F.(2d) 265, 266 (C. C. A. 2). It is difficult, especially at night, for a navigator to estimate the speed of another vessel coming up astern. Those in charge of the navigation of the Fort Armstrong could reasonably expect the approaching vessel to accommodate herself to a backing movement the necessity for which had long been obvious. They did not know, and cannot be charged with notice, that the Coastwise was not carrying a full head of steam and hence was unable to check her way as quickly as she might otherwise have done. Even if she was only four or five hundred feet astern when the Fort Armstrong sounded her second backing signal, we are not satisfied that danger was apparent to her navigators. If she had any sternway at all at the moment of collision it was slight, and her pilot and captain say that her engines had been working ahead for about a minute. This is a case to which is applicable the principle that when the fault of one vessel is gross and the fault of the other doubtful, the former should bear the whole loss. The City of New York, 147 U. S. 72, 85, 13 S. Ct. 211, 37 L. Ed. 84; The Ludvig Holberg, 157 U. S. 60, 71, 15 S. Ct. 477, 39 L. Ed. 620; The M. J. Rudolph, 292 F. 740, 743 (C. C. A. 2).

Accordingly, the decree is reversed and the libel dismissed, with costs.